**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARLES MAPP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15 C 3800 |
| | ) |
| BOARD OF TRUSTEES OF COMMUNITY | ) |
| COLLEGE DISTRICT NO. 508 d/b/a | ) |
| CITY COLLEGES OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Charles Mapp ("Mapp") has sued Board of Trustees of Community College District No. 508 (commonly referred to, and referred to here, by the institutional name "City Colleges"), charging it with disability discrimination in violation of Title II of the Americans with Disabilities Act ("the Act," 42 U.S.C. § 12132 et seq.)[1]. Now before this Court for decision is City Colleges' motion for summary judgment under Fed. R. Civ. P. ("Rule") 56.

**Summary Judgment Standards**

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v.

---

[1] All later citations to the Act will take the form "Section --," omitting the prefatory "42 U.S.C. §."

Pauley, 337 F.3d 767, 770 (7th Cir. 2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

**Background**[2]

Mapp is a legally blind student enrolled at City Colleges (C. St. ¶¶ 1-2). To accommodate his disability, City Colleges provided Mapp with a classroom assistant as well as a note-taker and transcriber (C. St. ¶ 7). At the start of the Spring 2015 semester Mapp enrolled in a class titled "Math 98" that was taught by Professor Williams, and a note-taker was assigned to assist Mapp in the class (C. St. ¶ 10). Mapp attended the first and second day of the class and did not experience any difficulty, and he states that he believed he had everything he needed to complete the class in the way of accommodation (C. St. ¶¶ 11, 15).

On the second day of class Williams asked Mapp whether he could see the board and whether he could read braille, to which Mapp replied he could see only shadows and silhouettes and could read braille "a little bit" (M. Dep. 75). What followed in the conversation is unclear. According to Mapp, Williams said, "I don't think you're going to be able to complete the class"

---

[2] City Colleges' LR 56.1 statement of facts will be cited "C. St. ¶ --," with Mapp's responsive statement cited "M. St. ¶ --." Where a response does not provide a version of the facts different from that set out in the original statement, this opinion cites only the original statement. All of the facts narrated in the text are undisputed unless specifically noted otherwise. Citations to the three depositions in this case -- those of Mapp, his Professor Richard Williams ("Williams") and his note-taker Victor Cole ("Cole") -- will employ their respective initials "CM," "RW" and "VC," followed in each instance by "Dep." City Colleges' Memorandum in Support of Summary Judgment will be cited "C. Mem."

(M. St. ¶ 12). Although City Colleges' Response to Plaintiff's Statement of Material Facts (Dkt. No. 47) does not dispute that, Williams testified in his deposition that he made no such comment (RW Dep. 26: 12-15). Instead Williams contends that he did not indicate to Mapp that it would be difficult for him to take the class, that he "was concerned about what resources [Mapp] would have," that his own wife had "finished medical school blind" and that he "knew the resources that [his] wife had when she was in medical school" (RW Dep. 26: 12-15; C. St. ¶ 13). Such disparities between (1) a party's response (or in this instance nonresponse) to an adversary's Statement of Material Facts and (2) the testimony of one of its witnesses are highly unusual.

Indeed, research has not uncovered a direct parallel, but LR 56.1(b)(3)(B) requires the party opposing a movant for summary judgment to file:

> a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon . . .

Here the statement that Mapp attributes to Williams is set out in that response (M. St. ¶ 12) and was not addressed at all in City College's Dkt. No. 47 response (the final filing in the parties' exchange as to facts). That nonresponse by one party is the kind of thing that typically renders the other party's assertion a disputed issue of material fact (see, e.g., such cases as Curtis v. Costco Wholesale Corp., 807 F.3d 215, 218-19 (7th Cir. 2015)).

That however is an issue that need not be resolved, because this Court is not required to discern the exact words of the conversation in order to decide whether a question of material fact exists. Another witness, Mapp's note-taker Cole, testified that "[Williams] said he wasn't sure how [Mapp] was going to be able to handle that class because he had a wife that was blind, and

he knows how difficult it can be" (VC Dep. 12:12-19). But in all events it is agreed by the parties that Mapp believed Williams did not think he could complete the class (C. St. ¶ 14).

Mapp then approached an advisor at Malcolm X College -- a Mrs. Gibson (M. St. ¶ 22). Mapp asserts that on hearing Williams' comment Mrs. Gibson said "that she was not surprised" and that "previous students had complained about [Williams]." (M. St. ¶ 23). According to Mapp, Mrs. Gibson tried but was unable to help him enroll in Math 98 with a different teacher (CM Dep. 88: 12-17). Mapp then dropped Math 98 from his schedule and enrolled in a different and unrelated class (C. St. ¶ 12). In the fall of 2015 Mapp reenrolled in and passed Math 98 at Harold Washington College, one of the seven other City Colleges (CM Dep. 122: 17-20; C. St. ¶ 18). In the interim summer semester he took a course called "Math Level Up," during which he adjusted to a new way of learning math without his eyesight (C. St. ¶¶ 17-19).

## **Disability Discrimination**

Section 12132 provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Here there is no dispute that Mapp is a qualified person with a disability. As to what constitutes exclusion by reason of disability, <u>Wisconsin Cmty. Servs., Inc. v. City of Milwaukee</u>, 465 F.3d 737, 752 (7th Cir. 2006) has explained:

> Similarly, under our Title II case law, the "on the basis of" language requires the plaintiff to show that, "but for" his disability, he would have been able to access the services or benefits desired.

Thus Mapp is charged with having to show that (1) City Colleges excluded him from his math class (2) as a result of his blindness -- or more precisely for Rule 56 purposes, with having to

show that there is a genuine issue of material fact on that score. Whether he has failed as a matter of law is a subject to which this opinion now turns.

First up for consideration is the question whether City Colleges excluded Mapp from his math class. Whatever the precise words of the conversation between Williams and Mapp may have been on the second day of Math 98, it is undisputed that Mapp intended to take Math 98 in the Spring 2015 term but that he dropped the class after his conversation with Williams. It is also undisputed that Mapp was not able to enroll in any other Math 98 section that same semester at Malcolm X College and that his enrollment in a Math 98 course was delayed two semesters and occurred at a different City Colleges location.

City Colleges has not met its burden of establishing that no reasonable trier of fact could find that its actions excluded Mapp from Math 98. Whether or not Williams expressly said "I don't think you're going to be able to complete the class," as Mapp would have it, by his own admission Williams was concerned that Mapp did not have the "resources" necessary to succeed in his class, and that concern stemmed from his knowledge of how his wife had completed medical school while blind. Certainly whatever the precise words of Williams' comment may have been, the reasonable inference from Mapp's ensuing course of conduct is that he understandably took it as dashing cold water on his prospect of success in proceeding with the class.

Moreover, nothing in the record indicates that Williams tempered his comment by, for instance, recommending that Mapp remain enrolled in the class but seek additional resources and accommodation. And although City Colleges had an opportunity to dispel Mapp's perception that Williams wished to exclude him, it failed to do so. When Mapp broached the subject with his advisor Mrs. Gibson, her statements and conduct were consistent with an agreement that

Williams did not want Mapp in his class -- note her effort to enroll Mapp in Math 98 with a different teacher.

City Colleges also contends that Mapp was not really excluded from Math 98 because he later completed and passed the course two semesters after having dropped Professor Williams' section (C. Mem. 2). But that argument overlooks the fact that in the wake of Williams' alleged comments Mapp did not complete Math 98 within his intended timeline or at his intended location. Mapp's plans changed solely because Williams made statements that Mapp perceived as objecting to his participation in the class because of his disability. Mapp's having eventually enrolled in and passed Math 98 with a different teacher during a later semester at a different City Colleges location does not alter his coming within the Wisconsin Cmty. Servs. requirement that "but for his disability, he would have been able to access the services or benefits desired" (465 F.3d at 752).

Nor does Mapp have any difficulty with the need to show that a trier of fact could reasonably conclude that his exclusion from the Williams-taught Math 98 class was because of his blindness. Williams began the second day of class by asking Mapp whether he could see the board and read braille (C. St. ¶ 14). Williams' comments were clearly made with regard to Mapp's disability, and they were the basis of Mapp's decision to withdraw from the class. Mapp's decision could also have been the consequence of a failure on the part of Williams and City Colleges to provide the accommodation necessary to avoid discrimination -- a failure that is likewise prohibited under ADA's Title II and its implementing regulation, 28 C.F.R. § 35.130(b)(7)(i) (Washington v. Indiana High School Athletic Ass'n, Inc., 181 F.3d 840, 848 (7th Cir. 1999)).

Finally, City Colleges' liability does not turn on whether Williams intended to discriminate against Mapp on the basis of his disability (Washington, 181 F.3d at 846). Rather, discrimination under ADA's Title II may be established by evidence that "defendant intentionally acted on the basis of the disability" (id. at 847). So Mapp need not show that a reasonable jury could find that Williams specifically intended to deny Mapp the "benefits and services" of City Colleges -- instead he must show only that a reasonable interpretation of facts suggests that Williams spoke intentionally and did so on the basis of Mapp's disability.

## **Vicarious Liability**

City Colleges argues that it is not liable for discrimination under Title II of the ADA because Mapp does not assert discrimination on the part of its Board of Trustees or of any employee of City Colleges other than Williams (C. Mem. 3). But City Colleges does not cite any case law to the effect that regular agency principles do not hold it accountable for the conduct of its employees, nor does it assert any affirmative defenses to vicarious liability. In fact, the Supreme Court expressly declined just last year to rule on whether Title II imposes liability on public entity employers for the purposeful conduct of their employees (City and County of San Francisco v. Sheehan, 135 S. Ct. 1765, 1773-74 (2015)).

For its part, our Court of Appeals has held in Silk v. City of Chicago, 194 F.3d 788, 805 (7th Cir. 1999) that the employment provision of the ADA (its Title I, 42 U.S.C. § 12111 et seq.) imposes respondeat superior liability. And although its recent decision in Reed v. Columbia St. Mary's Hosp., 782 F.3d 331, 337 (7th Cir. 2015) did not directly address the question of vicarious liability, that case also recognized that a plaintiff had stated viable claims under ADA's Title II against a defendant hospital based on the conduct of its employees. This Court therefore

disagrees with City Colleges' contention disputing any liability stemming from the actions of its employee.

## **Conclusion**

Accordingly, having considered the record in the light of reasonable inferences favorable to nonmovant Mapp, this Court denies City Colleges' motion for summary judgment (Dkt. No. 40). This action is set for a status hearing at 9 a.m. September 1, 2016 to discuss further proceedings looking to trial.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 25, 2016